No. 23-1815

# In the United States Court Appeals for the First Circuit

**UNITED STATES OF AMERICA**

Appellee,

v.

**Eddie Colon-Vazquez**

Defendant-Appellant

_____

On Appeal from the United States District Court for
the District of Puerto Rico
Crim. Case No. 23-CR-00079-(01) FAB
Hon. Francisco A. Besosa, U.S. District Judge

_____

## APPELLANT'S BRIEF

_____

**LAW OFFICES OF
MAURICIO HERNANDEZ ARROYO
USCA-1ST Cir. Bar No. 42462
Attorney for Appellant
Eddie Colon-Vazquez
818 Avenue Hostos, Suite B
Playa de Ponce, Puerto Rico 00716
Tel. No. (787) 597-4815
email: lawofficesmhernandez@gmail.com**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………….i-ix

JURISDICTIONAL STATEMENT ........................................................................2

ISSUES PRESENTED FOR REVIEW ..................................................................2

    I.    Whether the Waiver of Appeal in the Plea and Forfeiture Agreement is enforceable.

    II.    The Court Failed to Adequately Justify Doubling Mr. Colon's Sentence from a Guideline Sentence to 4 years.

STATEMENT OF THE CASE................................................................. 3-8

    A. Resentence Report……………………………………………………4

    B. Sentencing Hearing……………………………………………………...5

SUMMARY OF THE ARGUMENT .................................................…..8-9

STANDARD OF REVIEW .....................................................................……9

ARGUMENTS AND AUTHORITY ................................................................ 10-29

    I.    THE COURT FAILED TO ADEQUATELY JUSTIFY DOUBLING MR. COLON'S SENTENCE FROM A GUIDELINE SENTENCE T O 4 YEARS...................................................................10

        A.    The guideline recommended sentence of 24 months adequately accounts for the nature of the offense and the characteristics of the offender ..................... 14

        B.    Since 24-month sentence adequately addresses the nature of the offense, the nature of the weapon possessed alone cannot justify a variance……………………16

        C.    The nature and quantity of the ammunition in this case also does not justify the extent of the

variance ........................................................................ 19

    D.    The extent of the  upward variance here was inadequately justified by the court ........................................... 25

CONCLUSION.................................................................................29

CERTIFICATE OF COMPLIANCE .........................................31

CERTIFICATE OF SERVICE ..................................................32

ADDENDUM

**FEDERAL CASE LAW**                                                        **PAGE**

*Bryant V. Consol. Rail Corp.,*
  672 F.2d. 217, 220 (1ˢᵗ. Cir. 1982)…………………………………………….10

*Gall v. United States,*
  552 U.S. 38 (2007) ................................................................9,14

*Kimbrough v. United States,*
  552 U.S. 85 (2007).................................................................7,8

*Koon v. United States,*
  518 U.S. 81 (1996)...................................................................15

*Peugh v. United States,*
  569 U.S. 530 (2013) ................................................................14

*United States v. Arango,*
  508 F.3d 34 (1st Cir. 2007) ..................................................... 14

*United States v. Bryant,*
  571 F.3d 147, 153 (1st Cir. 2009) ............................................ 9

*United States v. Carrasquillo-Sanchez,*
  9 F.4th 56 (1st Cir. 2021) ....................................................18,23

*United States v. Carreo-Hernandez,*
  643 F.3d 344,349 (1st Cir. 2011) ............................................ 9

*United States v. Garcia-Perez,*
  9 F.4th 48, 52 n.1 (1st Cir. 2021)…………………………………..17,18,23,26

*United States v. Giraldo,*
  45 F.3d 509 (1st Cir. 1995)........................................................

*United States v. Madera-Ortiz,*

637 F.3d 26 (1st Cir.2011) ........................................................... 13

*United States v. Martin,*
520 F.3d 87 (1st Cir. 2008) ........................................... …...18,26

*United States v. Montero-Montero,*
817 F.3d 35,37 (1st Cir. 2016) ........................................... 13,14

*United States v. Rivera-Berrios,*
968 F.3d 130 (1st Cir. 2020) ....................................................17,18,23

*United States v. Rivera-Gonzalez,*
776 F.3d 45 (1st Cir. 2015) .......................................................11

*United States v. Sepulveda-Hernandez,*
817 F.3d 30 (1st Cir. 2016) ......................................................13

*United States v. Soto-Cruz,*
449 F.3d 258, 260 (1st Cir. 2006) ...............................................10

*United States v. Soto-Soto,*
855 F.3d 445,448 n.1 (1st Cir. 2017) ..........................................10

*United States v. Turbides-Leonardo,*
468 F.3d 34 (1st Cir. 2006) .......................................................13

*United States v. Tweeter,*
257 F.3d 14, 24 (1st Cir. 2001) ...............................................10

*United States v. Vargas-Garcia,*
794 F.3d 162 (1st Cir. 2015) .................................................. 13

*United States v. Zaleski,*
686 F.3d 90 (2nd Cir. 2012) ....................................................23

## Sᴛᴀᴛᴜᴛᴇs

18 U.S.C. § 922(g)(l) ..............................................................6

18 U.S.C. § 922(0) ...........................................................4,16

18 U.S.C. § 924(a)(2) ......................................................... 4

18 U.S.C. 924(d)...............................................................4

18 U.S.C. § 3231 ......................................................... 2

18 U.S.C. § 3553(a)……………………………………………..6,9

18 U.S.C. § 3553(C)……………………………………………13

18 U.S.C. § 3553(a)(2)(A) .......................................................7

18 U.S.C. § 3553(a)(2)(B)....................................................... 7

18 U.S.C. § 3553(a)(2)(C).......................................................7

18 U.S.C. § 3553(a)(6) .......................................................... 15

26 U.S.C. § 5845(a) ..........................................................16

28 U.S.C. §991(b)(l)(B)...................................................... 15

28 U.S.C. § 1291 .......................................................... 2

**RULES**

Fed. R. Crim. P. 11(b)(1)(N) .................................................. 11

**UNITED STATES SENTENCING GUIDELINES**

U.S.S.G. § 2K2.1 .......................................................16

U.S.S.G. § 2K2.l(a)(l), (a)(3), (a)(4)(B)…………………………………16

U.S.S.G. § 2M5.2(a)(2) .......................................................22

U.S.S.G. § 3E.1.1(a)……………………………………………5

U.S.S.G. § Al.3 ....................................................................... 25

**OTHER SOURCES**

American Airlines, https://www.aa.com/i18n/travel-info/baggage/firearms-and-ammunition.jsp ................................. 22

"Ammo Weight Chart | How Much 100 Rounds Weigh by Type." Survival Freedom, 23 Oct. 2021, survivalfreedom.com/ammo-weight-chart-how-much-100-rounds-weigh-by-type .................................................. 22

Betts, Andrew. "The Dirty Little Secret Ammo Makers Don't Want You To Find Out." LooseRounds.Com, 3 Oct. 2015, looserounds.com/2015/10/02/the-dirty-little-secret-ammo-makers-dont-want-you-to-find-out ....................................................... 24

Delta Airlines, https://www.delta.com/us/en/baggage/prohibited-or-restricted-items/ammunition-explosives-firearms ................................... 22

"How Many Rounds in a Box, Brick, and Case? | By Ammo Type." Survival Freedom, 23 Oct. 2021, www.survivalfreedom.com/how-many-rounds-in-a-box-brick-and-case-by-ammo-type ........................................... 21

Jet Blue, https://www.jetblue.com/help/musical-instruments-and-other-special-items ........................................................................ 22

Willis, Jay. "Owning a Gun in America Is a Luxury." GQ, 30 Apr. 2018, www.gq.com/story/gun-ownership-cost ......................................... 21

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Mr. Colon respectfully requests oral argument before this Court on all issues raised herein. Counsel submits that his familiarity with the issues will substantially assist this Court in its resolution of the case.

**APPEAL NO. 23-1815**

# In the United States Court of Appeals for the First Circuit

_____

**UNITED STATES OF AMERICA**
Appellee

v.

**EDDIE COLON-VAZQUEZ**
Defendant-Appellant

_____

On Appeal from the United States District Court for the

District of Puerto Rico
Crim. Case No. 23-CR-00079 (FAB)
Hon. Francisco A. Besosa, U.S. District Judge

_____

**BRIEF FOR THE APPELLANT**
_____

**TO THE HONORABLE COURT:**

The defendant-appellant, Mr. Eddie Colon-Vazquez ("Mr. Colon"), represented by the undersigned CJA appointed counsel, Mauricio Hernandez Arroyo, respectfully submits his opening brief:

# APPELLATE JURISDICTION

This appeal is from the judgment imposed upon Mr. Colon by the United States District Court for the District of Puerto Rico on September 15, 2023, and entered on the same date, September 15, 2023. DE 26; Appellant's Addendum pp. 1-7.[1] On September 26, 2023, Mr. Colon's timely notice of appeal was filed. DE 28; Appellant's Appendix (hereinafter referred to as "AA") p.1-2.

The District Court has jurisdiction to consider this appeal pursuant to 28 §1291. This case originated from the prosecution of offenses against the laws of the United States, and the lower court exercised jurisdiction under 18 U.S.C. § 3231.

# STATEMENT OF ISSUES FOR REVIEW

I. Whether the Waiver of Appeal in the Plea and Forfeiture Agreement is enforceable.

II. The Court Failed to Adequately Justify Doubling Mr. Colon's Sentence from a Guideline Sentence to 4 years.

---

[1] Citations to the record are as follows: Docket entries in D.P.R. Criminal Case No. 23-cr-00079 ("DE-[ ]"); Appellant's Appendix ("AA"); Appellant's Sealed Appendix ("SA"); Page and lines of transcripts ("DE- at : ").

## STATEMENT OF THE CASE

The case is a "mine-run" machine gun case that is not out of the heartland cases that did not involve violence and was a victimless crime. The District Court erred when it stated the contrary that this case should be taken out of the heartland without adequate reasoning of Mr. Colon's individual characteristics and facts of the case. On February 28, 2023, at approximately 7:00 am, the Puerto Rico Police received a confidential call regarding an individual sleeping in a vehicle (white four door Kia Forte), Puerto Rico license plate IST 427, in Jardines de Montellano Public Housing Project (JMPHP) in Cayey, PR. Puerto Rico Police agents (PRPD) verified the vehicle information and discovered that the vehicle was reported stolen on February 24, 2023. When PRPB agent entered JMPHP to investigate the stolen vehicle, the car was seen at the end of the main street. PRPB observed two individuals, including Eddie Colon-Vasquez, sitting in the driver's seat with his legs out of the vehicle, and a second male crouching in front of him. PRPB approached the vehicle, identified as a police officer and gave the individual a halt command. PRPB observed a rifle on the passenger side of the vehicle. The individual that was crouching ran away and Colon-Vazquez tried to flee, from the driver's side of the vehicle but stumbled and fell. He was caught, arrested and read his Miranda's rights. From the vehicle, seized were 2 firearms, a rifle and five (5) magazines and a total of 200 rounds of ammunition, and other clothing.

On March 9, 2023, Mr. Colon was the sole defendant of a One Count Indictment rendered by the District of Puerto Rico Grand Jury, in violation of 18

U.S.C. §923(o) and §924(a)(2). DE 9. AA 49-51.

On June 16, 2023, Mr. Colon pleaded guilty at his Change of Plea hearing. DE 32. AA 3-22. On the same date, June 16, 2023, the parties executed a Plea and Forfeiture Agreement that contained a waiver of appeal and recommendation on no more than 24 months by the government and 18-month recommendation by Mr. Colon. DE 20, 1-12. AA 52-63.

On September 26, 2023, the parties Mr. Colon was sentenced to a forty-eight (48) months imprisonment. Judgment was entered on September 15, 2023. DE 26, App. Addendum, p. 1-7.

Mr. Colon challenges the imposition of a forty-eight (48) month prison sentence, double the recommended sentence of 24 months agreed to in the Plea Agreement, as procedurally and substantively unreasonable.

**Presentence Investigation Report**

Mr. Colon decided to plead guilty to one Court of the Indictment, DE 9, in violation of 18 U.S.C. section 922 (o) and forfeitures pursuant to Title 18, U.S.C. section 924(d) and Title 28, U.S.C. section 2461(c), including firearms and ammunition without any specification of amounts of ammunition. DE 20, AA 52-63.

Mr. Colon accepted responsibility of his offense conduct as reported in the Presentence Investigation Report ("PSR") that granted him a two (2) level decrease, pursuant to USSG § 3E.1.1(a). DE 22, App. Sealed Appendix, 5-24.

The Total Offense Level (TOL) was 20, increased by two (2) levels as offense involved three firearms, TOL 22, decreased by two (2) levels for acceptance of responsibility, and decreased an additional one (1) level for assistance as per USSG § 3E.1.1(b). that reduced TOL to 19 and the Criminal History score of one (1). The parties did not object to the PSR. DE 23. Thus, all of the facts are deemed admitted.

### Sentencing Hearing

The District Court TOL 19 with adjustments, was found to have a sentencing range of 30 to 37 months and Criminal History Category I. DE 22, pgs. 8-9, App. Supplemental Sealed Appendix, 12-13. The stipulated sentence recommendation of 18 to 24 months. The district court then sentenced Mr. Colon to a term of imprisonment of 48 months by imposing an upward variance. DE 26.

The district court then made the following references to the machine guns crimes in Puerto Rico which, according to the district court:

"A modern machine gun can fire more than a thousand rounds per minute, which allows a shooter to kill dozens of people within a matter of seconds".

"Short of bombs, missiles, and biochemical agents, the Court can conceive of few weapons that are more dangerous than machine guns. A machine gun is unusual, and outside of a few government-related uses, machine guns exists on the black market".

"In short, machine guns are highly dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes. DE 31, p.7; AA 29.

Subsequently, the court went on to impose an upward variant sentence of 48 months; above the guideline imprisonment range from 30 to 37 months, thus, 11 months longer than the higher end of the guideline sentencing range. DE 31, p. 21, AA 43.

Mr. Colon' counsel preserved his sentencing objections for appeal and presented mitigating factors.

Mr. Colon's defense counsel objected and the Government's requested the 24-month stipulated sentence in the PFA.

The remaining sentencing mitigation factors raised by Mr. Colon were his personal characteristics and familiar circumstances,

As to the substantive reasonableness of the sentence, defense counsel averred all of the above objections that albeit, not using the words, 'procedurally and substantively unreasonable', explicitly stated that the sentence should be reconsidered. The district court denied the objections, and this appeal followed.

During the sentencing hearing, the district court stated citation to a First Circuit caselaw, and explicit USSG policy disagreement for not accounting for the amount of ammunition and/or magazines involved in the offense. The court did not explicitly state the sentencing reasoning and disagreement. The Court's Statement of Reasons (Statement) does contain Section VI, 18 U.S.C. 3553(a) checked boxes,

To provide just punishment for the offense, to promote respect for the law, and to provide just punishment for the offense  (18 U.S.C. § 3553(a)(2)(A).

To afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B)).

To protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C);

Section VIII contains the list of 3 firearms, two that were in the Indictment and accepted responsibility in the PFA, and the list of property seized from the vehicle. The Statement also alleges that the Court cited US v. Merced-Rivera, US v. Valle-Colon; US v. Bruno-Campos, US v. Henry, US v. Diaz-Rivera, US v. Flores-Machicote, US v. Narvaez-Soto, US v. Viloria-Sepulveda, US v. Hatch, US v. Arroyo Maldona; US v. Contreras-Delgado, US v. Rivera-Berrios, US v. Flores-Gonza 27, p.4, App. Supplementary Appendix, 1-4.   However, there are some citations that went unannounced at sentencing. Id.

In contrast, the record is clear as the district court *did not* check the box in the Statement that has Policy Disagreement with the Guidelines *(Kimbrough v. U.S., 552 U.S. 85 (2007): (Specify).*  Id.

The Statement, Section VIII:  Additional Basis For the Sentence in this Case: did not recited the district court's comments regarding machine gun and magazines outlined in this case.  This last statement was not articulated by the district court at sentencing.  If any policy disagreement (Kimbrough variance), it

was not marked out in the Statement's list of reasons for the variance.

## SUMMARY OF THE ARGUMENT

The district court committed a procedural error when the court imposed an upward variance based on the nature of a machinegun, something that is already contemplated in the guidelines. Likewise, the district court's reliance on machine guns in Puerto Rico and the comparable deaths in each of the First Circuit States without any citation to authority.

The record clearly shows that the district court never mention any "Kimbrough variance" and in no way attempted to ground the variance in a policy disagreement with the guidelines. Any attempt to do so must fail as the only comment was only included the Statement of Reasons issued after the sentencing hearing. Id. DE 27. The Court's failure to state any of these reasons did not provide notice to defense counsel of the 'Kimbrough variance' based upon policy disagreement. It was impossible at sentencing, or after, to raise any objections to disagreement with guidelines, if any, notwithstanding the Mr. Colon's attorney raised that the gun possession was already included in the guidelines.

The district court issued a sentence procedural and substantively unreasonable. There is nothing that takes Mr. Colon' case out of the heartland machinegun cases. Lastly, imposing a 48-month sentence –11 months higher than the contested guideline sentencing range– on a violence free offender,

violence and victim free crime with no facts of note beyond the type of firearm, exceeds any plausible rationale.

## STANDARD OF REVIEW

A sentencing court's legal determinations of the Sentencing Guidelines' meaning, and scope is reviewed *de novo*. Factual determinations are reviewed for clear error. United States v. Carrero- Hernández, 643 F.3d 344, 349 (1st Cir. 2011); United States v. Bryant, 571 F.3d 147, 153 (1st Cir. 2009).

Because defense counsel lodged an objection to the sentence below, this Court undertakes a two-step review of the reasonableness of his sentence for abuse of discretion. The Court first determines whether the sentencing court committed any procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51 (2007). If no procedural error is found, the Court will then evaluate the substantive reasonableness of the sentence.

Out of an abundance of caution, we address in anticipation of the Government's briefing boilerplate contention that the review of the procedural claims should be for plain error because the objections below lacked sufficient specificity. As this Circuit has held, "to preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with

exquisite precision." See United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017); cf. Bryant v. Consol. Rail Corp., 672 F.2d 217, 220 (1st. 1982)(explaining that counsel did not have to "cite to the specific rule or use any particular form of words" to preserve evidentiary objection). It is enough if the objection is "sufficiently specific to call the district court's attention to the asserted error." Soto-Soto, 855 F.3d at 448 n.1.

At sentencing, the defense counsel after the district court issued the sentence, stated that "....[W]e very respectfully request reconsideration of the Court's sentence, Your Honor. The Court imposed double what the Government was asking, Your Honor, We feel that he is being sentenced for firearms or crime of items for which he was not indicted, Your Honor, or perhaps they are being used as enhancements, and these enhancements are not even mentioned in the presentence investigative report as an option, as a possibility, Your Honor. For example, ammunition is mentioned nowhere in the indictment, Your Honor. And I'm aware that items were found in the car, but we really do not know the circumstances or the totality of the circumstances for which these items were in the car, Your Honor. And he should be sentenced for the facts of the case, not for speculations, Your Honor."

Accordingly, this Court should review de novo the claims for preserved objections and not under any lower standard of clear error standard.

## LEGAL ARGUMENT

I.   Whether the Waiver of Appeal in the Plea and Forfeiture Agreement is enforceable.

Mr. Colon entered into a Plea and Forfeiture Agreement (PFA) that contained a waiver of appeal clause is non-binding and as a consequence, Mr. Colon does have the right to appeal as the district court did not follow the stipulated sentencing

recommendation under the plea agreement.  A.A. PFA, pgs. 52-63, Waiver at 56; DE 20, p. 5, par. 10.

Under the plea agreement, Mr. Colon knowingly and voluntary agreed that, if the imprisonment sentence imposed by the Court was 24 months or less, Mr. Colon would waive the right to appeal any aspect of the judgment and sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture and the terms and conditions of supervised release.

In general, "[p]lea agreement waivers of the right to appeal . . . . are presumptively valid…, subject to the Court of Appeals inherent power to disregard them to avoid a miscarriage of justice."  U.S. v. Soto-Cruz, 449 F.3d 258, 260 (1st Cir. 2006).  In the instant case, the language of the plea agreement is clear and unambiguous provides for a waiver of the right to appeal and during the Change of Plea (COP) the court fully discussed the waiver of appeal provision, which Mr. Colon acknowledged understanding.  AA 3-22, at 14, DE 32, p.12.  Mr. Colon was assisted by counsel during the COP proceedings, and he did not object any of the stipulated waivers in the plea agreement when interrogated by the district court judge and found he intelligently agreed to waive the right to appeal.  U.S. v. Tweeter. 257 F.3d 14, 24 (1st Cir. 2001); Fed. R. Crim. P. 11(b)(1)(N).

Therefore, the government must concede that the appeal waiver should be unenforceable because the lower court departed from the agreement's recommendation, 24 months, hence, this Court should not be precluded from reviewing this case.  U.S. v. Rivera-Gonzalez, 776 F.3d 45 (1st Cir. 2015). The

district court sentenced Mr. Colon to forty-eight-month (48) imprisonment, which is double the recommended stipulated between the parties. Otherwise, the waiver enforcement could result in a miscarriage of justice. Finally, this non-binding waiver of the right to appeal argument is raised in Mr. Colon's opening brief to advance this case and to rebut the government from raising its usual own argument of waiver by appellant for failure to raise it in it's opening brief.

II.    The Court Failed to Adequately Justify Doubling Mr. Colon's
       Sentence From A Guideline Sentence to 4 Years

Mr. Colon and the government agreed to recommend a 24-month sentence. The Judgment and sentence imposed in our case of 48 months, represented a significant upward variance of 11 months over the high end of the guidelines, 24 months over the sentence recommended by the Government, and 30 months (2.5 years) over the sentence recommended by the Mr. Colon. DE 31, p.11; AA p.33, lines 1-5. The district court's sentence went even further than the 2-year recommended sentence that Mr. Colon had agreed to accept. It added an additional 2 years of imprisonment, bringing the total variance in this case to 2 years, double the parties stipulated recommended sentence. In this appeal, Mr. Mr. Colon is contesting the decision to upwardly vary, based upon facts not found to be a crime, including items found in a stolen car that

Mr. Colon was not charged in the indictment, and the 100% variance that the district court imposed.

A sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Although the sentencing court's explanation need not "be precise to the point of pedantry," *United States v. Turbides-Leonardo,* 468 F.3d 34, 40 (1st Cir. 2006), the explanation ordinarily must "identify the main factors driving [the court's] determination." *United States v. Sepulveda-Hernandez,* 817F.3d 30, 33 (1st Cir. 2016); *see United States v. Vargas-Garcia,* 794 F.3d 162, 166 (1st Cir. 2015).

"The level of detail required varies depending on the circumstances." *United States v. Madera-Ortiz,* 637 F.3d 26, 31 (1st Cir.2011) (citation and internal quotation marks omitted). While a sentence within the guideline sentencing range has a lesser burden of adequate explanation, a sentence above or below the guideline sentencing range has a heavier burden of adequate explanation. *United States v. Montero-Montero,* 817 F.3d 35, 37 (1st Cir. 2016) (citations omitted). And that burden increases in proportion to the extent of the court's deviation from the guideline range: the greater the deviation, the greater the burden of

justifying the sentence imposed. *Id.*

A steeper variance requires a more significant justification that must be made explicit and major variances must be accompanied by an adequate explanation of the reasoning. *See Gall,* 552 U.S. at 50; *see also Peugh,* 569 U.S. at 543.

Our First Circuit has followed that the greater explanation required for a greater variance must be made on the record "to allow for meaningful appellate review and to promote the perception of fair sentencing." *See Gall,* 552 U.S. at 50; *see also United States v. Arango,* 508 F.3d 34, 47 (1st Cir. 2007) ('An explanation in open court also furthers the weighty goals of transparency and credibility for the justice system").

In this case, the court gave some reasons for the extreme variance it imposed. None of these adequately explain or justify the sentence imposed on Mr. Colon.

A.  The guideline recommended sentence of 24 months adequately accounts for the nature of the offense and the characteristics of the offender.

When evaluating the reasonableness of this sentence, it is appropriate for this Court to contextualize Mr. Colon's conduct within the spectrum of related offenses scored under related

guidelines. *See Koon v. United States,* 518 U.S. 81, 96 (1996) (in evaluating a deviation from the guideline range, the court must consider the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole"). Our sentencing system's focus is decidedly on the individual defendant and his particular conduct, rather than his offense of conviction:

> (1) The purposes of the United States Sentencing Commission are to --establish sentencing policies and practices for the Federal criminal justice system that --
>
> (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among *defendants with similar records* who have been found guilty of *similar criminal conduct.*

28 U.S.C. §991(b)(l)(B) (emphasis added). This approach best serves the Fair Sentencing Act's goal of "avoid[ing] unwarranted sentence disparities among defendants with *similar records* who have been found guilty of *similar conduct."* 18 U.S.C. § 3553(a)(6) (emphasis added).

But nothing meaningfully distinguishes Mr. Colon from a defendant with a similar criminal history who engaged in identical conduct.

B.  **The 24-month sentence adequately addresses the nature of the offense, the nature of the weapon possessed alone cannot justify a variance.**

The sentencing court's expressed concerns about the nature of machineguns cannot justify a variance, much less the extreme upward variance issued by the district court. As explained above, the characteristics of that weapon and its capacity to shoot bullets in rapid succession are, under a wholistic reading of the guidelines, adequately addressed by a 24-month sentence.

It is worth noting that a modified pistol is also on the less dangerous side of the spectrum relative to other weapons receiving the same guideline offense level score under U.S.S.G. §2K2.1. For guidelines purposes, a pistol modified to shoot in full automatic mode is treated the same as different types of types of devices "described in 26 U.S.C. § 5845(a)," like short-barreled shotguns and rifles, sawed-off shotguns, bombs, grenades, missiles, mines, bazookas, mortars, and the like. *See* U.S.S.G. § 2K2.l(a)(l), (a)(3), (a)(4)(B) and 26 U.S.C. § 5845(a) & (e).

This Court has already reversed this sentencing court's upwardly variant §922(0) sentences in at least two separate

cases because the court had focused on the dangerous nature of the weapon itself in imposing its variance. *Garcia-Perez,* 9 F.4th at 56; *United States v. Rivera-Berrios,* 968 F.3d 130, 136 (1st Cir. 2020).

In *Rivera-Berrios,* this Court noted that the district court "made pellucid that the driving force behind the upward variance ... was the nature of the firearm that the appellant possessed: a machinegun," and pointed out that the court's concerns about machineguns "are universal in their application," to all machinegun possession offenses. *Id.* at 135.

Similarly, in *Garcia-Perez,* the same sentencing court again fixated on the "dangerous and unusual" nature of an automatic pistol, in imposing an upward variance. 9 F.4th at 53. This Court held that the district court's reliance on Garcia-Perez's possession of a machinegun could not suffice as an adequate explanation for its variance because the nature of the weapon possessed was already accounted for in the recommended guideline. *Id.*

Our First Circuit, in another District of Puerto Rico appeal challenging an upward variance for a machinegun possession offense, similarly held that the dangerousness of machineguns alone could not justify an upward variance, since it was already

taken into consideration as part of the guideline recommendation. *United States v. Carrasquillo-Sanchez,* 9 F.4th 56, 59 (1st Cir. 2021).

The reasoning applied in *Rivera-Berrios, Carrasquillo-Sanchez* and *Garcia-Perez,* are relevant here. The comments made by the district court below clarify that its variance was driven by the fully automatic nature of the weapon, a consideration adequately addressed by the parties recommended guideline sentence of 24 months.

Therefore, the court's upward variance required the district court judge to provide a justification beyond the automatic nature of the firearm to establish its reasonableness. *Rivera-Berrios,* 968 F.3d at 136; *Garcia-Perez,* 9 F.4th at 53-56; *Carrasquillo-Sanchez,* 9 F.4th at 59. This justification should have been "rooted either in the nature and circumstances of the offense or the characteristics of the offender." *United States v. Martin,* 520 F.3d 87, 91 (1st Cir. 2008). The court did point to additional "circumstances of the offense," but either of these additional considerations do not justify the variance in this case.

C.    The  nature and quantity of the ammunition in this case also
      does not justify the extent of the variance.

         In imposing the sentence below, the  sentencing court noted

the following:

> "In addition to the two automatic firearms for which
> Mr. Colon plead guilty, a Model 22 Gen. 4 .40 caliber Glock
> pistol, and a Smith & Western assault rifle, both alter to
> shoot automatically, Mr. Colon possessed, as we indicated
> before, a third pistol which is a black polymer 80 pistol, a
> high capacity Glock magazine of 22 rounds capacity, a
> Glock magazine of 13 rounds capacity, a high-capacity rifle
> magazine of 30 rounds each, two high-capacity rifle
> magazines of 30 rounds each, 46 rounds of .40 caliber
> ammunition, 112 rounds of .223 caliber ammunition for the
> assault rifle, a fanny pack, gloves, an Iphone, two ski
> masks, and a black hoodie, plus he was dress in black.  All
> that are evidence of matters to do either with drug
> transactions or violent crime on the island."

> "Mr. Colon stated he wanted to be like his friends.
> Well, his friends,-- *if* his friends had that type of weaponry
> with them, they are – ***they would also be probably
> involved*** in drug trafficking or violent crimes.   The
> guidelines fails to reflect the seriousness of this offense."
> (emphasis ours). DE 31, pgs. 11-12, AA 33-34.

         There were never any statements made by defendant that his

friends had any weapons or that he, or his friends, were ever

involved in drug trafficking.  The district court's statement was a

hypothetical, **if** his friends had that type of weaponry with them,

"they would **probably** be also involved in drug trafficking of

violent crimes" Id. There are no facts in the record to support this finding to warrant a reasoning for the extreme variance. Finally, the district's courts statements that Mr. Colon was dressed in black, had gloves, and an Iphone, was not indicative of any criminality for the reasoning of the extreme variance, and thus was error. The possession of a sky mask, is also not sufficient reason to warrant the double variance. Mr. Colon's personal characteristic were not taken into consideration, only cursory stated, in addition to that Mr. Colon has no criminal history, has never been arrested, was no charged with the stolen vehicle, he never discharged the firearms, and was in mere possession of firearms. He quickly took ownership and filed its change of plea that was held on June 16, 2023, some four (4) months after his arrest in late February 2023. Therefore, there is nothing in the presentence report that was objected to and is silent to these factors. DE 22. App. Sealed Supplemental Appendix, pgs. 5-24. See September 8, 2023 PSR Addendum, no objections filed. DE 23.

In addition, there are no federal limits to how much ammunition one can legally own, and there is no prohibition on specialty ammunition. These considerations did not turn this

into an unusual or extraordinary case.

Nothing in the record indicates that a total of 5 magazines and 200 rounds of ammunition for three (3) separate firearms, two (2) firearms that Mr. Colon plead guilty to in his plea agreement, is atypical or outside the ordinary for typical gun ownership. Many pistols come with two magazines, and it is not unusual for gunowners to purchase extra magazines and to have several hundred rounds of ammunition. See Willis, Jay. "Owning a Gun in America Is a Luxury." GQ, 30 Apr. 2018, www.gq.com/story/gun-ownership-cost (observing that gun owners usually buy multiple additional magazines and approximately 200 rounds of practice ammunition and 100 rounds of self-defense ammunition).

Ammunition is typically purchased in boxes of 50 rounds or more, with some specialty bullets being sold in boxes of 20. See "How Many Rounds in a Box, Brick, and Case? I By Ammo Type." Survival Freedom, 23 Oct. 2021, www.survivalfreedom.com/how-many-rounds-in-a-box-brick-and-case-by-ammo-type.

For reference, airlines ordinarily allow a gunowner to travel with up to 11 pounds of ammunition as checked baggage. See for example *w*ebsites for various major airlines:

- American Airlines, https://www.aa.com/i18n/travel-info/baggage/firearms-and- ammunition.jsp,

- Delta Airlines, https://www.delta.com/us/en/baggage/prohibited-or-restricted- items/ammunition-explosives-firearms,

- Jet Blue,https://www.jetblue.com/help/musical-instruments-and-other-special-items.

This will typically amount to several hundred rounds. See "Ammo Weight Chart I How Much 100 Rounds Weigh by Type." Survival Freedom, 23 Oct. 2021, www.survivalfreedom.com/ammo- weight-chart-how-much- I 00-rounds-weigh-by-type.

Another point of reference: the only guideline pertaining to firearms mentioning quantity of ammunition, significantly ratchets down the offense level when the number of rounds is less than 500. *See* U.S.S.G. § 2M5.2(a)(2).

This case did not involve an unusually large amount of ammunition in the context of typical gun ownership. To give one example, the Second Circuit evaluated an unrelated legal issue where a defendant was indicted and convicted of fifteen counts of possessing machine guns, one count of possessing a firearm with

an obliterated serial number, and twelve counts of possessing unregistered firearms, silencers, and destructive devices. *United States v. Zaleski,* 686 F.3d 90, 91 (2nd Cir. 2012).

The "large cache" of weapons in that case included 65,000 rounds of ammunition, in addition to guns, magazines, body armor, grenades, a grenade launcher, gun and grenade parts, explosive chemicals, and materials for making fuses and pipe bombs. *Id.* (emphasis added). Incidentally, the defendant in that case received a sentence of 101 months.

Here, as in *Rivera-Berrios,* "[t]here was no large cache of ammunition," rather the quantity of ammunition was "entirely consistent with simple possession of a machine gun." 968 F.3d 135; *see also Garcia-Perez,* 9 F.4th at 54 (finding that 65 rounds of ammunition and three magazines was "not so great" that it would have been deemed an appropriate basis for an upward variance); *Carrasquillo-Sanchez,* 9 F.4th at 62 (finding that 5 magazines and 128 rounds were mentioned neither by the government nor by the court as an exceptional circumstance justifying a variance). This is especially true in consideration of the fact this was the total amount of ammunition Mr. Colon possessed both near the gun, on

his person, or anywhere in his dwelling.

It should be noted that the firearm and ammunition Mr. Colon possessed was in the stolen car that he was never charged with, and *no* additional ammunition was found during the search of Mr. Colon's home where he was arrested or on his person.

_____

The type of ammunition that Mr. Colon had does not justify the extreme variance in this case either. After a search , we found no cases where an upward variance was applied based on the possession of the type of ammunition at issue in this case, or even treating its possession as an aggravating factor.

_____

*See* Betts, Andrew. "The Dirty Little Secret Ammo Makers Don't Want You To Find Out." LooseRounds.Com, 3 Oct. 2015 www.looserounds.com/2015/10/02/the-dirty-little-secret-ammo- makers- don't-want-you-to-find-out (observing that new forms of ammunition "rarely deliver" an "actual performance advantage," and their claims often "amount to absolute snake oil.")

In the case at bar, the district court drew conclusions about this ammunition because of its quantity, rather than based on any evidence or concrete information in the record at the sentencing hearing. To the extent that the district court concluded the ammunition in Mr. Colon's possession was used for drug trafficking and violent crime, that conclusion was not based on "information

having sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6Al.3.

D.     **The extent of the upward variance here was inadequately justified by the court.**

None of the reasons expressed by the district court at sentencing justify the extent of the upward variance in this case. For the reasons stated above, Mr. Colon's 24-month recommended guideline sentence accounted for his actual conduct, including the fully automatic nature of his weapon, and his no prior criminal record. Neither the amount of ammunition nor the type of ammunition Mr. Colon possessed bring this case outside an ordinary case.

It must be noted that the record provides no information to suggest that Mr. Colon is a violent person or that he has ever used or even fired the weapon found in his car. Nothing about Mr. Colon's personal characteristics or the nature of the offense are sufficiently atypical or aggravating to justify the additional time the court imposed here.

Given the fact that the guideline recommendation of 24 months accounted all the salient features of Mr. Colon's offense, it was error for the sentencing court to simply rely on the fully

automatic nature of the weapon, the unextraordinary quantity of the ammunition and its unsupported assumptions about some of that ammunition to justify the extreme variance at issue.

The failure to provide adequate reasons for a variance can be characterized as either procedural error or a challenge to the substantive reasonableness of the sentence. Garcia-Perez, 9 F.4th at 52 n.1. Substantive sentencing error analysis requires the court to consider whether the sentence imposed is based on a "plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008). Here, because the court failed to adequately justify or offer a plausible sentencing rationale for an extraordinarily large upward variance, the sentence was both procedurally and substantively unreasonable. The court did not adequately explain why an additional 2 years above an already significant 2-year sentence was necessary to fulfill the purposes of sentencing. The 4-year sentence imposed is not a defensible result.

The district court cited some cases, discussed herein as well, but did not cite to all of the cases in the Statement of Reasons.    DE 27, Section VIII, App. Supplementary Sealed Appendix, pgs. 1-4.

The district court found that the recommended do not reflect the seriousness of the offense, do not promote respect for the law, do not protect the public from additional crimes by Mr. Colon, nor do they address the issues of deterrence and punishment. DE 31, p.8, AA 30.

The Court stated that:

> "during his interview, in the presence of counsel, by the probation officer, Mr. Colon said he engaged in his conduct because he was following a trend living his life as if it were a movie. He was following the acquaintance that pressured and supported this type of behavior. He denied being a risk in the community. He expressed repentant an felt he disappointed his parents as he was raised not to behave like he did. Rather, he was taught to go to church and focus on practicing sports." Id.

After recital of the firearms Mr. Colon possessed, and pled guilty, the Court stated that "All of that are evidence of matters having to do either with drug transactions or with violent crime in the island." Id, p. 11, AA 33. The Court again reiterated Mr. Colon's comment that he wanted to be like his friends, and concluded they would be also probably involved in drug trafficking or violent crimes. This reasoning was conjecture and unsubstantiated nexus not based upon any facts in the PSR, or found in the record and constituted error.

The Court's rudimentary citation of sentencing rationale stated:

"substantial amounts of ammunition is directly relevant to the sentencing calculus. Because the guideline calculations or the sentencing – sentence recommendation do not account for the weapons and fire power that Mr. Colon possessed, or the significant amount of ammunition and the magazines that he possessed, plus the ski masks not really pertinent to Puerto Rico, and the black hoodie, require a sentence above the guidelines or the recommended sentencing range." DE 31, 13, AA 36.

The sentencing Court further stated that:

"The high crime rate and proliferation of illegal firearms in Puerto Rico further underscore the inadequacy of the guideline sentence and the parties' recommendation. The onslaught of criminal activity throughout this jurisdiction is an appropriate sentencing consideration, a factor that promotes general and specific deterrence." Id

The Court's rudimentary citation of cases attempted to a sentencing rationale regarding 2013 murder rate, citing U.S. Flores-Machicote; citing Narvaez-Soto, incident of violent crime is acute problem in P.R.; Villoria-Sepulveda, PR is a hot spot for weapons; citing Seventh Cir. U.S. v. Hatch, rise in Chicago's gun violence and flow of guns from Indiana; U.S. v. Rivera-Berrios, vacating sentence as the punishment imposed as unmoored from any individual characteristic of either the offender or the offense of conviction. District Courts are required to establish a case-specific nexus between the offense of conviction. DE 31 15, AA 37. The Court citing Flores-Gonzalez, not fully decided by a En Banc Petition as of the date of sentencing, said case that Mr. Colon has cited and briefed

herein.

Finally, the district court made comparisons with sister states, located in the First Circuit, in New Hampshire, Maine, Massachusetts and Rhode Island, with uncited authority, regarding statistics of population and murders rates. DE 31, 18-19, AA 40-41. "The lethality of assault rifles and machine guns such as the assault rifle and the pistol that Mr. Colon possessed are amplified by the high crime rate in Puerto Rico." Id, 20, AA 43.

The district court's recital of the possessions recovered from Mr. Colon and his association with unnamed, unknown, persons, with no record of any drugs, and his reasons that did not explicitly stated any crimes, did not provide a sufficient sentencing rationale for the extreme variant sentence.

Again, the circumstances surrounding Mr. Colon' offense conduct are not unremarkable. A review of the record shows that his case lacks the factors that could have sustained a sentence outside of the heartland. To sum up, in this case a 24-month variance is manifestly unwarranted.

## CONCLUSION

The district court committed error when it determined that Mr. Colon's sentence focused on machine gun possession, ammunition and criminality in

Puerto Rico and the type of firearm is insufficient to validate the upward variant sentence imposed by the lower court.

**WHEREFORE**, this Court should vacate the 48-month sentence and remand the case for resentencing directing the district court to employ the base offense level of 19 and sentence Mr. Colon within the corresponding guideline sentencing range. In the alternative, if this Court determines that the calculations were correct, this Court should nonetheless vacate the 48-month sentence based on the other errors adduced and remand with instructions to sentence Mr. Colon within the recommended 18-24-month sentence guideline sentencing range.

**RESPECTFULLY SUBMITTED.**

In Miami, Florida, this 22nd day of November of 2024.

**/s Mauricio Hernandez Arroyo**

**LAW OFFICES OF**
**MAURICIO HERNANDEZ ARROYO**
**USCA-1ST Cir. Bar No. 42462**
**Attorney for Appellant**
**Eddie Colon-Vazquez**
**818 Avenue Hostos, Suite B**
**Playa de Ponce, Puerto Rico 00716**
**Tel. No. (787) 597-4815**
**email: lawofficesmhernandez@gmail.com**

# Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   ☑ this brief contains  6,425  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains_____lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using  MS WORD, Century Schoolbook  14  point  , *or*

   ☐ this brief has been prepared in a monospaced typeface using  _____ _____.

/(s) Mauricio Hernandez Arroyo

Attorney for: Eddie Colon-Vazquez

November 22, 2024

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I electronically filed this Brief for Appellant with

the Clerk of Court using the CM/ECF system, which will send notification of this filing to

all parties of record, including counsel to the Appellee:

Damare E.R. Theriot
Assistant U.S. Attorney Suite 1201,
350 Carlos Chardon Street San Juan, PR 00918
Tel. (787) 766-5656

In Miami, Florida, this 22nd day of November of 2024.

**/s Mauricio Hernandez Arroyo**

**LAW OFFICES OF
MAURICIO HERNANDEZ ARROYO
USCA-1ST Cir. Bar No. 42462
Attorney for Appellant
Eddie Colon-Vazquez
818 Avenue Hostos, Suite B
Playa de Ponce, Puerto Rico 00716
Tel. No. (787) 597-4815
email: lawofficesmhernandez@gmail.com**

IN THE UNITED STATES COURT OF APPEALS FOR THE
FIRST CIRCUIT
_____

APPEAL NO. 23-1815
_____

UNITED STATES OF AMERICA,
APPELLEE,

V.

EDDIE COLON VAZQUEZ

DEFENDANT - APPELLANT
_____

On Appeal from the United States District Court For the
District of Puerto Rico

Case No. 23-CR-00079 (FAB) Francisco A. Besosa
_____

# ADDENDUM TO APPELLANT'S BRIEF
_____

**LAW OFFICES OF**
**MAURICIO HERNANDEZ ARROYO**
**USCA-1ST Cir. Bar No. 42462**
**Attorney for Appellant**
**Eddie Colon Vazquez**
**818 Avenue Hostos, Suite B**
**Playa de Ponce, Puerto Rico 00716**
**(787) 597-4815**
**email: lawofficesmhernandez@gmail.com**

**i.**

**ADDENDUM TO
APPELLANT'S BRIEF
TABLE OF CONTENTS**

1. Judgment, September 15, 2023, DE 26.........................................................1-7

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Eddie COLON-VAZQUEZ (1) | Case Number:  3:23-cr-00079-01 (FAB) |
| | USM Number:  46825-510 |
| | Miguel A. Rodriguez-Robles |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)     Count One (1) of the Indictment on 6/16/2023.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §922 (o) | Possession of a Machinegun | 2/28/2023 | One (1) |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____    ☐ is    ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/15/2023
Date of Imposition of Judgment

/S/ FRANCISCO A. BESOSA
Signature of Judge

Francisco A. Besosa, Senior U.S. District Judge
Name and Title of Judge

9/15/2023
Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page   2   of   7

DEFENDANT:   Eddie COLON-VAZQUEZ (1)
CASE NUMBER:   3:23-cr-00079-01 (FAB)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
 Forty-eight (48) months.

☑  The court makes the following recommendations to the Bureau of Prisons:
   That defendant be provided of any available vocational training courses, English as second language courses, and the 500-hour drugs/alcohol treatment program if he qualifies.
   The Court recommends the defendant be designated to FCI Miami or Coleman Facility in Fl.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at  _____  ☐ a.m.  ☐ p.m.   on  _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on  _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:    Eddie COLON-VAZQUEZ (1)
CASE NUMBER:    3:23-cr-00079-01 (FAB)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Three (3) years.

## MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you
        pose a low risk of future substance abuse. *(check if applicable)*
4.    ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
        restitution. *(check if applicable)*
5.    ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.    ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as
        directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
        reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT:  Eddie COLON-VAZQUEZ (1)
CASE NUMBER:  3:23-cr-00079-01 (FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____    Date _____

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3B — Supervised Release

Judgment—Page __5__ of __7__

DEFENDANT:  Eddie COLON-VAZQUEZ (1)
CASE NUMBER:  3:23-cr-00079-01 (FAB)

# ADDITIONAL SUPERVISED RELEASE TERMS

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. He shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. Mr. Colon shall participate in the services until he is discharged by the service provider, with the approval of the Probation Officer.

3. He shall participate in vocational training and a job placement program, as recommended by the Probation Officer.

4. He shall provide the Probation Officer access to any financial information upon request.

5. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

6. He shall submit himself and his property, house, residence, vehicles, papers and effects, computers and other electronic communication or data storage devices or media to a search, at any time, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer but only in the lawful discharge of the supervision functions of the probation officer who must have a  reasonable suspicion of unlawful conduct or of a violation of a condition of supervised release. The probation officer may seize any electronic communication or electronic device or medium which will be subject to additional forensic investigation or analysis. Failure to submit to a search or permit a seizure may be grounds for revocation of supervised release. Mr. Colon shall warn any other resident or occupant that the premises may be subject to searches pursuant to this condition.

7. He shall not possess or use controlled substances unlawfully, and shall submit to a drug test within fifteen (15) days of release from imprisonment; after his release, Mr. Colón shall submit to random drug testing, not less than three (3) samples during the supervision period, but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office as has been approved by this Court. If the illegal use of controlled substances is detected in any sample, Mr. Colón shall participate in an inpatient or an outpatient substance abuse treatment program, for evaluation or treatment, as arranged by the Probation Officer; payment shall be based on his ability to pay or the availability of payments by third parties, as approved by the Court.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
　　　　　　　　　　　Sheet 5 — Criminal Monetary Penalties

| | | | | Judgment — Page | 6 | of | 7 |

DEFENDANT: Eddie COLON-VAZQUEZ (1)
CASE NUMBER: 3:23-cr-00079-01 (FAB)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ 0.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $　　　　0.00 | $　　　　0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

　　☐ the interest requirement is waived for the    ☐ fine   ☐ restitution.

　　☐ the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  Eddie COLON-VAZQUEZ (1)
CASE NUMBER:  3:23-cr-00079-01 (FAB)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ ___100.00___ due immediately, balance due

☐ not later than _____ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Case Number
Defendant and Co-Defendant Names
*(including defendant number)*          Total Amount          Joint and Several
                                                                  Amount          Corresponding Payee,
                                                                                   if appropriate

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
Mr. Colon shall forfeit all rights, title, and interest in all assets, which are subject to forfeiture, as outlined in the page 9 of the written plea agreement.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.