# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## NO. 23-1815

## UNITED STATES OF AMERICA,

Appellee,

**v.**

## EDDIE COLÓN-VÁZQUEZ,

Defendant-Appellant.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

## BRIEF FOR APPELLEE

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Daphne M. Cordero-Guilloty
Special Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iii

Jurisdictional Statement ...................................................................................................... 1

Statement of the issues on Appeal ..................................................................................... 2

Statement of the Case .......................................................................................................... 3

Summary of the Argument ................................................................................................. 13

Argument ............................................................................................................................... 15

**I.     The district court imposed a procedurally and substantively reasonable upwardly variant sentence for a defendant who possessed two machineguns, an MP15 model Smith & Wesson rifle, seven ammunition magazines, over 200 rounds of ammunition, as well as one black hoodie, two ski masks, and gloves, where it appropriately calculated the guidelines range, properly considered the pertinent sentencing factors, and provided a sufficient explanation in selecting the sentence.**

        Issue ........................................................................................................................... 15

        Standard of Review ................................................................................................ 15

        Discussion ................................................................................................................ 17

Conclusion ............................................................................................................................. 36

Certificate of Compliance ................................................................................................... 38

Certificate of Service ........................................................................................................... 39

**FEDERAL CASES**

Gall v. United States, 552 U.S. 38 (2007) ............................................ 15, 16, 18, 29

Holguin Hernández v. United States,
140 S.Ct. 762, 206 L.Ed.2d 95 (2020).................................................. 17, 28

United States v. Rosario-Merced, 109 F.4th (1st Cir. 2024) .......................... 34, 35

United States v. Gibbons, 553 F.3d 40 (1st Cir. 2009) ........................................ 19

United States v. Bramley, 847 F.3d 1 (1st Cir. 2017) .......................................... 20

United States v. Bruno-Campos, 978 F.3d 801 (1st Cir. 2020) ......... 24, 26, 32, 33

United States v. Bunchan, 626 F.3d 29 (1st Cir. 2010)........................................ 31

United States v. Burgos,
F.4th __, 2025 WL 985104 (1st Cir. Apr. 2, 2025) ................................................ 21

United States v. Caballero-Vázquez, 896 F.3d 115 (1st Cir. 2018) ................... 22

United States v. Carmona-Alomar, 109 F.4th 60 (1st Cir. 2024)........................ 35

United States v. Carrasquillo-Sánchez, 9 F.4th 56 (1st Cir. 2021) ............... 34, 35

United States v. Clogston, 662 F.3d 588 (1st Cir. 2011) ..................................... 31

United States v. Delgado-Sánchez, 849 F.3d 1 (1st Cir. 2017) ........................... 27

United States v. Duarte, 246 F.3d 56 (1st Cir. 2001) ........................................... 16

United States v. Díaz-Lugo, 963 F.3d 145 (1st Cir. 2020) ...................... 17, 24, 33

United States v. Espinoza-Roque, 26 F.4th 32 (1st Cir. 2022) ........................... 20

United States v. Fernández–Cabrera, 625 F.3d 48 (1st Cir. 2010) ................. 6, 19

United States v. Flores-Machicote, 706 F.3d 16 (1st Cir. 2013)....................27-28

United States v. García-Mojica, 955 F.3d 187 (1st Cir. 2020) ....................... 26, 33

United States v. García-Pérez, 9 F.4th 48 (1st Cir. 2021) .............................. 34, 35

United States v. González-Andino, 58 F.4th 563 (1st Cir. 2023) ....................... 20

United States v. González-Flores, 988 F.3d 100 (1st Cir. 2021) ........................ 33

United States v. Henry, 688 F.3d 637 (9th Cir. 2012) ............................................ 9

United States v. Hutchinson,
2019 WL 1140197 (M.D. Ala. Mar. 12, 2019) ..................................................25-26

United States v. Laureano-Pérez, 797 F.3d 45 (1st Cir. 2015) ............................ 18

United States v. Madera-Ortiz, 637 F.3d 26 (1st Cir. 2011) ................................ 29

United States v. Martin, 520 F.3d 87 (1st Cir. 2008) .......................... 15, 23, 29, 30

United States v. Morales-Negrón, 974 F.3d 63 (1st Cir. 2020) ........................... 26

United States v. Pabón, 819 F.3d 26 (1st Cir. 2016) ............................................. 20

United States v. Polaco-Hance, 103 F.4th 95 (1st Cir. 2024)........................ 34, 35

United States v. Rivera-Berríos, 968 F.3d 130 (1st Cir. 2020)...................... 34, 35

United States v. Rivera-González, 776 F.3d 45 (1st Cir. 2015).................... 21, 22

United States v. Rivera-Morales, 961 F.3d 1 (1st Cir. 2020) ............................... 25

United States v. Rivera-Santiago, 919 F.3d 82 (1st Cir. 2019) ..................... 23, 24

United States v. Ruiz- Huertas, 792 F.3d 223 (2015) ........................................... 28

United States v. Santa-Otero, 843 F.3d 547 (1st Cir. 2016) ................................ 32

United States v. Santa-Soler, 985 F.3d 93 (1st Cir. 2021) ................................... 28

United States v. Santiago-Rivera, 744 F.3d 229 (1st Cir. 2014) ................... 18, 22

United States v. Santini-Santiago, 846 F.3d 487 (1st Cir. 2017) ........................ 19

United States v. Vargas-García, 794 F.3d 162 (1st Cir. 2015)............16, 29-30, 31

United States v. Velez-Soto, 804 F.3d 75 (1st Cir. 2015) ..................................... 16

United States v. Viloria-Sepúlveda, 921 F.3d 5 (1st Cir. 2019) .......................... 27

**FEDERAL STATUTES**

18 U.S.C. § 922(o) ..................................................................................... 1, 4

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3553(a) ................................................................................... 8

18 U.S.C. § 3742(a) ................................................................................... 1

28 U.S.C. § 1291 ....................................................................................... 1

18 U.S.C. §3553(a)(2) ............................................................................... 27

**FEDERAL RULES**

Fed. R. App. P. 4(b) .................................................................................. 1

**FEDERAL SENTENCING GUIDELINES**

U.S.S.G. §2K2.1(a)(4)(B) ................................................................. 6, 24, 33

U.S.S.G. § 2K2.1(b)(1)(A) ...................................................................... 6, 7

USSG § 2K2.1 ......................................................................................... 9

## JURISDICTIONAL STATEMENT

In this criminal case for possession of machineguns, in violation of 18 U.S.C. § 922(o), the district court entered its judgment of conviction and sentence on September 25, 2023. (DE 26).[1] On September 26, 2023, defendant-appellant Eddie Colón-Vázquez ("Colón-Vázquez") timely filed a notice of appeal from that judgment. (DE 28). *See* Fed. R. App. P. 4(b).

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] DE refers to the docket entries before the district court in District of Puerto Rico criminal case No. 23-79; AA is the Appellant's Appendix; and AB is the Appellant's Brief.

**Whether the district court imposed a procedurally and substantively reasonable sentence, where it appropriately calculated the guidelines range, properly considered the pertinent sentencing factors, and provided a sufficient explanation in selecting the sentence.**

**STATEMENT OF THE CASE**

**A. <u>Offense of conviction</u>[2]**

On February 28, 2023, at approximately 7:00 a.m., agents of the Puerto Rico Police Bureau, Caguas Strike Force, responded to a report that a person was observed sleeping in a stolen vehicle parked in the Jardínes de Montellano public housing project. (AA at 20, DE 20 at 12). Upon arrival, the agents observed Colón-Vázquez sitting in the driver's seat.  He was talking to a man crouched in front of him. *Id.* It was noted that both front doors were open. *Id.* The crouched man proceeded to flee the scene. Colón-Vázquez tried to flee but fell and was apprehended. While searching the vehicle, police found the following items, among other things:

- a black-and-gray-colored Glock pistol loaded with a bullet in the chamber and a 22-round capacity ammunition magazine containing 16 rounds of ammunition;

- a black-colored Polymer 80 pistol loaded with a 22-round capacity Glock ammunition magazine containing 17 rounds of ammunition;

- a model MP 15 Smith & Wesson rifle;

---

[2] Because Colón-Vázquez's appeal follows his conviction by guilty plea, the government draws these facts from the undisputed amended presentence investigation report (PSR) used at sentencing, the plea agreement, and the transcript of the disposition hearing.

- a 22-round capacity Glock ammunition magazine;

- a 13-round capacity Glock ammunition magazine;

- a 50-round capacity rifle ammunition magazine;

- two rifle ammunition magazines, each with capacity for 30 rounds;

- 46 rounds of .40 caliber ammunition;

- 112 rounds of .223 caliber ammunition;

- a black-colored fanny pack;

- a pair of Firm Grip gloves;

- a gray-colored iPhone;

- two ski masks;

- a black-colored hoodie.

(DE 22 at 6). In total, Colón-Vázquez possessed "over 200 rounds of ammunition." (AA at 21). Both pistols seized had been modified to fire as machineguns. *Id.*

## B. Charges, plea agreement, and change-of-plea colloquy

On March 23, 2022, a federal grand jury returned a one-count indictment against Colón-Vázquez. (AA at 51-53; DE 9 at 1-3). Count 1 charged him with possession of a machinegun, in violation of 18 U.S.C. § 922(o). *Id.*

Later, on June 16, 2023, Colón-Vázquez pled guilty to Count One of the Indictment, pursuant to the terms of the Plea Agreement. (AA at 54-65; DE 20 at 1-12). Under the plea agreement, Colón-Vázquez admitted that he knowingly possessed the two pistols knowing that they had been modified to fire automatically as machineguns. (AA 64; DE 20 at 11). In addition, he agreed to forfeit his "rights and interest [in] any firearms and ammunition involved or used in the commission of the offense, including, but not limited to: "Glock model 22 pistol… and a Smith and Wesson model MP 15 rifle…. (AA 62; DE 20 at 9).

The parties agreed that Colón-Vazquez could request a sentence as low as 18 months, while the United States could request up to 24 months of imprisonment. (AA at 57; DE 20 at 4). Colón-Vázquez also acknowledged that the court would not be able to calculate the guidelines until the presentence investigation report (PSR) was completed, that the guidelines were advisory, and that the court possessed the discretion to impose a sentence more severe than the sentence recommended by the Guidelines or the parties. (AA at 19-20, 55-56; DE 20 at 2-3). Furthermore, Colón-Vázquez consented to waive his right to appeal this case's judgment and sentence if

the imprisonment sentence was 24 months or less.[3] (AA at 58; DE 20 at 5).

## C. **Undisputed presentence investigation report** (PSR).

The United States Probation Office (USPO) later prepared and disclosed the PSR. (DE 22). In the PSR, the probation officer calculated a base offense level of 20 pursuant to U.S.S.G. §2K2.1(a)(4)(B). (DE 22 at 8). The probation officer applied a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) based on the involvement of three firearms. (DE 22 at 8). The probation officer then applied a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 19. (DE 22 at 9).

## D. **Sentencing**

At sentencing, Colón-Vázquez requested that the district court consider he is a young man, has no previous criminal record and "does have family support." (AA 26). Additionally, he acknowledged the consequences of his actions and the effect they had on himself and his family. (AA at 27). He requested an 18-months imprisonment sentence. *Id.* The government's

---

[3] The waiver of appellate review was not triggered in this case because the district court sentenced Colón-Vázquez to an imprisonment term exceeding 24 months. *See United States v. Fernández–Cabrera*, 625 F.3d 48, 51 (1st Cir. 2010) ("When the district court chose not to follow the parties' joint sentencing recommendation, the waiver-of-appeal provision, as framed, was relegated to the scrap heap.").

recommendation, as outlined in the plea agreement, was for a total imprisonment sentence of 24 months. (AA at 27). The government noted that at the time of the arrest, Colón-Vázquez was in possession of multiple rounds of ammunition, as well as one black hoodie, two ski masks, and gloves. (AA at 27-28). The government noted without objection from the defense that this was very worrisome because these were the tools that persons involved in either drug trafficking or violent incidents would use to disguise themselves when they prepare for shootouts. *Id.* The prosecutor clarified that she was not saying that Colón-Vázquez was being charged for those crimes here, but that the evidence seized spoke for itself. (AA at 28).

After hearing the parties, the district court determined that the PSR had correctly adjusted the guideline computations and that the PSR adequately reflected the components of Colón-Vázquez's offense, taking into account its nature and circumstances. (AA at 29-30). The court reviewed Colón-Vázquez's criminal history and determined that, based on a total offense level of 19 and a criminal history category of I, the advisory guideline imprisonment range for Colón-Vázquez's offense was 30 to 37 months. (AA at 29-30). Colón-Vázquez did not object to the court's guideline computations.

The court then considered the 18 U.S.C. § 3553(a) sentencing factors. (AA at 30). First, the court considered Colón-Vázquez's age, educational background, and current unemployment status. *Id.* The court also noted that Colón-Vázquez had a "history of using marijuana, Tramadol and Oxicodone without prescriptions." *Id.*

The district court then reviewed the nature and circumstances of the offense. (AA at 30-33). The court determined that Colón-Vázquez possessed the items seized from the vehicle, including the two pistols and the rifle. (AA at 31). The court further noted that the two pistols had been modified to fire as machineguns. *Id.* The court recounted other items found in the vehicle and possessed by Colón-Vázquez, including the significant amount of ammunition and seven ammunition magazines. *Id.*

Having found that Colón possessed two machineguns, the court explained that a "modern machine gun can fire more than a thousand rounds a minute, which allows a shooter to kill dozens of people within a matter of seconds" and that "[s]hort of bombs, missiles and biochemical agents, the Court can conceive of few weapons that are more dangerous than machine guns." (AA at 31). The court concluded that "machine guns are highly dangerous and unusual weapons that are not typically possessed by law-

abiding citizens for lawful purposes." *Id*. The court's findings tracked the findings in *United States* v. *Henry*, 688 F.3d 637, 640 (9th Cir. 2012).

The court then noted Colón-Vázquez's statements to the probation officer that he (Colón-Vázquez) engaged in this conduct "because he was following a trend and living his life as if it were a movie." (AA at 32; *see also* DE 22 at 7). Colón-Vázquez further told the officer that "he was following the acquaintances that pressured him supporting this behavior." (AA at 32; DE 22 at 7).

While explaining its decision to vary upward from the Guidelines, the district court emphasized that Colón-Vázquez possessed two pistols altered to fire automatically as machineguns, a Smith & Wesson model MP 15 rifle, a substantial amount of ammunition, and seven ammunition magazines, six of which were high-capacity magazines. (AA at 31-33). *See generally* USSG § 2K2.1, comment. (n.2) (noting that a magazine that can accept more than 15 rounds of ammunition is considered a large capacity magazine). The court further noted that Colón-Vázquez also possessed "a fanny pack, gloves, an iPhone, two ski masks, and a black hoodie, plus he was dressed in black." (AA at 33). The court found that the two ski masks were "not really something that is needed in Puerto Rico except to cover one's face to commit crimes," (AA

at 44), evidently referring to the fact that Puerto Rico has year-round tropical climate so there is really no need for such ski masks. As the government had argued earlier (AA 26), the judge found that the items seized were "evidence of matters having to do either with drug transactions or with violent crime on this island." (AA at 35). The court, however, did not find that Colón-Vázquez had himself engaged in any of those other possible crimes. (AA at 33-34). Rather, the court inferred that the friends or acquaintances that supported Colón-Vázquez's unlawful conduct were "probably involved in drug trafficking or violent crimes." (AA at 36; *see also* DE 22 at 7 (PSR documenting Colón-Vázquez's allegations that acquaintances pressured him and supported his unlawful behavior in the present case)).

After highlighting its concerns that Colón-Vázquez possessed not only two .40 caliber pistol machineguns but also a .223 caliber model MP 15 Smith & Wesson rifle, the court found that "the amount of ammunition of two different calibers . . . is also a significant factor constituting an additional reason for this Court to impose a variant sentence above the guidelines and above the recommended sentences." (AA at 36). The court concluded that "the guideline calculations . . . do not account for the weapons and fire power that Mr. Colon possessed, or the significant amount of ammunition and the

10

magazines that he possessed, plus the two ski masks . . . and the black hoodie, requir[ing] a sentence above the guidelines . . . ." (AA at 37).

The court then considered the problem of gun violence and the high crime rate in Puerto Rico and discussed First Circuit caselaw addressing this sentencing factor. (AA at 37-44). The court cited statistics about violent crimes in Puerto Rico compared to other districts in the First Circuit. (AA at 42-43). The district court was explicitly mindful that a court "cannot . . . consider the high crime rate in Puerto Rico without establishing a case-specific nexus." (AA at 43). The court thus explained that nexus in the case of Colón-Vázquez, noting, among other things, that he possessed "the firearms, ammunition, magazines, hoodie, two ski masks, and other items . . . because he followed acquaintances that pressured him and supported him in his illegal behavior," and that those items are used for criminal conduct. (AA at 44; *see also* DE 22 at 7).

Having determined that the sentences proposed by both parties did not adequately reflect the severity of the offenses committed by Colón-Vázquez, nor did they serve to instill respect for the law, nor protect the public from further criminal acts by Colón-Vázquez or effectively address the issues of deterrence and justice, the court imposed a sentence of

48 months' imprisonment. (AA at 45).

After the district court pronounced its sentence, Colón-Vázquez's counsel objected and requested reconsideration of the sentence. (AA at 48). He argued that Colón-Vázquez was "sentenced for firearms or crimes or items for which he was not indicted." *Id.* As an example, Colón-Vázquez noted that "ammunition is mentioned nowhere in the indictment." (AA at 49). The court denied the objection. *Id.* This appeal followed.

The district court's upwardly variant sentence of 48 months' imprisonment was both procedurally and substantively reasonable. The court followed proper procedure in weighing the relevant section 3553(a) factors, and plausibly explained the upward variance based on the need for just punishment and the serious nature and circumstances of the offense, including Colón-Vázquez's possession of not one but two machineguns, a rifle, a significant amount of ammunition, and seven ammunition magazines, six of which were high-capacity magazines. The court was further concerned by the fact that, in addition to all that firepower, Colón-Vázquez also possessed a black hoodie, gloves, and two ski masks, which the court found were not really needed in Puerto Rico other than to avoid identification when committing crimes. These facts, combined with Puerto Rico's elevated crime rate, increased the need for both specific and general deterrence, especially when considering Colón-Vázquez's assertion that he committed the instant offense because he was following a trend and following acquaintances who supported his criminal conduct. Finally, the sentence was substantively reasonable. The district court reached a defensible result after presenting a

cogent rationale that thoroughly delineated the court's apprehensions concerning Colón-Vázquez's conduct and the threat it posed to the community. This determination finds support in the precedent set by analogous caselaw affirming comparable variances.

In sum, Colón-Vázquez's 48-month variant sentence is both procedurally and substantively sound, and his arguments to the contrary are unavailing. The Court should affirm Colón-Vázquez's sentence.

**ARGUMENT**

**The district court imposed a procedurally and substantively reasonable upwardly variant sentence for a defendant who possessed two machineguns, an MP15 model Smith & Wesson rifle, seven ammunition magazines, over 200 rounds of ammunition, as well as one black hoodie, two ski masks, and gloves, where it appropriately calculated the guidelines range, properly considered the pertinent sentencing factors, and provided a sufficient explanation in selecting the sentence.**

ISSUE

Colón-Vázquez challenges the reasonableness of the sentence imposed by the district court. (AB at 8-9). He contends that the court imposed an upward variance based on considerations that were already factored into the advisory Guidelines range, specifically the nature of the machinegun and the amount of ammunition. *Id.* He further argued that the court failed to offer adequate justification for its upward variance. *Id*.

STANDARD OF REVIEW

In general, appellate review of federal criminal sentences is limited to instances of abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 45-46 (2007); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008). Within this framework, this Court reviews "a district court's factual findings for clear error, and its interpretation and application of the Guidelines de novo."

*United States v. Velez-Soto*, 804 F.3d 75, 77 (1st Cir. 2015). First, this Court evaluates whether the district court committed any procedural errors. *Id* at 78. Such errors include "failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

When a defendant fails to preserve a specific argument at sentencing, review is for plain error only. *United States v. Vargas-García*, 794 F.3d 162, 166 (1st Cir. 2015). To prevail under plain error, a defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Duarte,* 246 F.3d 56, 60 (1st Cir. 2001)). Assuming the district court committed no procedural error, this Court then considers a preserved challenge to the substantive reasonableness of the sentence using an abuse of discretion standard. *Gall*, 552 U.S. at 51.

Since Colón-Vázquez advocated for a shorter sentence than he received,

he preserved the substantive claim "that the shorter sentence would be sufficient and a longer sentence greater than necessary." *Holguin Hernández v. United States*, 140 S.Ct. 762, 766, 206 L.Ed.2d 95 (2020) (internal quotation marks and citations omitted); *see United States v. Díaz-Lugo*, 963 F.3d 145, 157 (1st Cir. 2020).

## DISCUSSION

### A. The district court followed the standard sentencing procedure, and its sentence constituted a defensible result based on a plausible rationale.

Contrary to Colón-Vázquez's allegations, the district court adhered to the standard sentencing procedure delineated by the Supreme Court. This included the court's articulation of the rationale justifying the appropriateness of an above-Guidelines sentence for Colón-Vázquez, a rationale that drew upon established First Circuit precedent. The district court's upwardly variant sentence of 48 months was procedurally and substantively reasonable.

### i. Colón-Vázquez's sentence was procedurally reasonable.

In making its sentencing decision, the district court followed the standard procedure. The Supreme Court set forth the standard procedure for

handing down criminal sentences in *Gall v. United States*, 552 U.S. 38 (2007). The district court's "starting point" is to determine the advisory sentencing range under the guidelines. *Id.* at 49. That includes resolving any objections to the presentence report. *United States v. Laureano-Pérez*, 797 F.3d 45, 80 (1st Cir. 2015). The parties then present their arguments on what they believe is the appropriate sentence. *Gall*, 552 U.S. at 49. After that, the district court must weigh the factors in section 3553(a) to determine an appropriate sentence. *Id.*

In this instance, the district court followed the established procedure set forth by statute and precedent. The parties first presented their positions to the district court. (AA at 26-27). The court then determined the advisory sentencing range and found, without any objection from the parties, that the PSR correctly calculated the range of 30 to 37 months. (AA at 30). The court thereafter stated it had considered the section 3553(a) factors (AA at 30), a statement that "is entitled to significant weight." *United States v. Santiago-Rivera*, 744 F.3d 229, 233 (1st Cir. 2014).

Furthermore, the court's sentencing rationale was based on a proper evaluation of the factors outlined in Section 3553(a). "Decisions that involve weighing the § 3553(a) factors are within the sound discretion of sentencing

courts, and [this Court] will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others." *United States v. Santini-Santiago*, 846 F.3d 487, 492 (1st Cir. 2017) (quoting *United States v. Gibbons*, 553 F.3d 40, 47 (1st Cir. 2009)). The court emphasized specific factors that it deemed merited a sentence above the advisory range. These factors included that Colón-Vázquez was found in possession of not one but two machineguns, plus a Smith & Wesson model MP 15 rifle. Colón-Vázquez also had more than 200 rounds of ammunitions. (AA at 62). The court also discussed the dangerousness of machineguns and their ability to cause mass casualties. Likewise, the court relied on the elevated crime rate in Puerto Rico and the corresponding heightened need for deterrence, especially when considering Colón-Vázquez's assertions that he committed the instant offense because he was following a trend and because his acquaintances supported it. (AA at 31; *see also* DE 22 at 7). *cf. United States v. Fernández-Cabrera*, 625 F.3d 48, 53 (1st Cir. 2010) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the presentence report with what the judge did.") (internal quotation marks and citation omitted).

Colón-Vázquez challenges for the first time on appeal the court's reliance on the problem of violent crime in Puerto Rico to justify an upward variance and its alleged failure to consider mitigating factors. (AB at 20, 25-26, 28-29). But Colón-Vázquez fails to argue plain error on appeal. *See United States v. González-Andino*, 58 F.4th 563, 567 (1st Cir. 2023); *see also United States v. Pabón*, 819 F.3d 26, 33 (1st Cir. 2016). "The proponent of plain error must carry the devoir of persuasion as to each of the four elements that collectively comprise the plain error standard." *United States v. Bramley*, 847 F.3d 1, 5 (1st Cir. 2017). Colón-Vázquez cannot meet his burden because of the lack of record support; his failure to develop an argument on each of the four prongs of plain error constitutes waiver of the issue. *See United States* v. *Espinoza-Roque*, 26 F.4th 32, 36 (1st Cir. 2022). In any event, his claim fails on the merits.

Colón-Vázquez challenges the court's weighing of the section 3553(a) factors by claiming that the court overly relied on the problem of violent crimes in Puerto Rico to justify an unwarranted upward variance. (AB at 28-29). Colón-Vázquez's argument is unavailing.

The court acted within its discretion in considering the incidence of violent crime in Puerto Rico and explaining that there was a heightened need

for deterrence in Colón-Vázquez's case, which involved not one but two machineguns, a rifle, several high-capacity magazines, and a substantial amount of ammunition. The district court compared Puerto Rico's murder rates with those of other First Circuit districts to underscore the heightened need for deterrence. (AA at 40-41). The court's analysis was reasonable and consistent with First Circuit precedent. *See, e.g., United States* v. *Burgos*, __ F.4th __, 2025 WL 985104, at *8 (1st Cir. Apr. 2, 2025) (reiterating that "the prevalence of gun violence in Puerto Rico" and "the high rate of recidivism among firearm offenders" "are sound bases on which an upward variance may be justified"); *United States v. Rivera-González*, 776 F.3d 45, 50-51 (1st Cir. 2015) (in handing out an upwardly variant sentence for possession of a firearm in furtherance of a drug trafficking crime, sentencing court referred to the high incidence of violent crime in Puerto Rico in connection with the need for deterrence, a legitimate sentencing goal).

Colón-Vázquez was not sentenced based on unrelated murder rates. Rather, the upwardly variant sentence was based on the serious nature and circumstances of the offense, Colón-Vázquez's characteristics, and the need for deterrence given the local context. This context was informed, in part, by

using murder rates across the districts. The district court did not consider community-based factors at the expense of other section 3553(a) factors. *See Santiago-Rivera*, 744 F.3d at 233 (judge discussed "a number of section 3553(a) factors, including the serious nature of the offenses of conviction, the defendant's unattractive criminal history, and the need for adequate deterrence").

The court explicitly stated that it was considering the factors outlined in Section 3553(a), in addition to the undisputed PSR, the parties' sentencing memorandums, the arguments by counsel and the prosecutor, as well as Colón-Vázquez's allocution. (AA 30). The court specifically referenced Colón-Vázquez's characteristics, such as his age, educational background, and employment status, some of the factors Colón-Vázquez claims it failed to consider. *Id.*; *see United States v. Caballero-Vázquez*, 896 F.3d 115, 120 (1st Cir. 2018)(sentencing court expressly considered potential mitigating factors like having completed a GED, being employed); *see also United States v. Rivera-González*, 776 F.3d 45, 49-50 (1st Cir. 2015) (court indicated awareness of the defendant's personal history by specifically acknowledging the mitigating

factors the defendant wanted it to consider, even though it did not give them the weight he would have liked).

The court also considered the serious nature and circumstances of Colón-Vázquez's offense. (AA at 30-31). The reasons for a variance "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." *Martin*, 520 F.3d at 91. The district court's reasoning was consistent with that principle. The court considered Colón-Vázquez's history and characteristics, including but not limited to the fact that he is "a long-term user of marijuana since he was 16 years old" and was thus prohibited from possessing a firearm. (AA at 29; DE 22 at 8). In recounting the nature and circumstances of the offense, the court emphasized that Colón-Vázquez possessed not one but two machineguns, a rifle, seven ammunition magazines, over 200 rounds of ammunition, a black hoodie, gloves, and two ski masks. *See United States v. Rivera-Santiago*, 919 F.3d 82, 85-86 (1st Cir. 2019) (this Court found that by identifying that a felon possessed two semi-automatic weapons, large capacity magazines and ammunition, the

district court noted factors that differentiated the case from a run-of-the-mill felon-in-possession offense contemplated by the guidelines.[4]).

The court's rationale for the upward variance was reasonable, as the Guidelines did not account for the additional aggravating factor of a second machinegun. *See* 2K2.1(a)(4)(B). (DE 22 at 8-9). *See Diaz-Lugo*, 963 F.3d at 155. ("The relevant guideline provision, *see* USSG § 2K2.1(a)(4)(B), contemplates only a single machine gun. Thus, the guideline calculation did not account for the possession of **two** machine guns, nor did it account for the possession of four high-capacity magazines." (emphasis in original)); *United States v. Bruno-Campos*, 978 F.3d 801, 806 (1st Cir. 2020) (noting that "[n]othing in either the guideline provision or the enhancement . . . accounted for the possession of more than one machine gun, substantial quantities of ammunition, and/or multiple high-capacity magazines" and that "[t]he sentencing court made pellucid its concerns about the seriousness of such firepower and such substantial quantities of ammunition, and those well-founded concerns sufficed to remove this case from the heartland of the relevant guidelines").

---

[4] The court in *Rivera-Santiago* also distinguished the defendant's case from the base offense because he was on supervised release for essentially the same offense he committed, while the sentencing guidelines contemplated "any prior offense." *Rivera-Santiago*, 919 F.3d at 85-86.

Machineguns are considered significantly more lethal than firearms in legal proceedings, and as such, they are given greater weight in determining penalties. For example, the minimum penalty for possessing a machinegun to assist in a drug trafficking crime is six times higher than the minimum penalty for possessing a firearm in the same context. 18 U.S.C. § 924(c)(1)(B)(ii). The disparate treatment of possession of a machinegun and a firearm under the sentencing guidelines and the statute suggests that the court's rationale for sentencing purposes is plausible, coherent, and based on the nature and circumstances of the offense. *See United States v. Rivera-Morales*, 961 F.3d 1, 19 (1st Cir. 2020) (where "the seriousness of the offense was the driving force in the sentencing calculus, its explanation was sufficient to satisfy the statutory mandate.").

Colón-Vázquez possessed not only two machineguns, but also a Smith & Wesson model MP 15 rifle, which is not an ordinary weapon. *Cf. United States v. Hutchinson*, No. 3:17-CR-481-WKW-1, 2019 WL 1140197, at 4 (M.D. Ala. Mar. 12, 2019) ("Though not 'rare,' an AK-47-style pistol is not an ordinary weapon.").

The court also acted within its discretion in varying upwardly based on Colón-Vázquez's possession of "over 200 rounds of ammunition" (AA at 62). (AA at 36 (court noting that the amount of ammunition of two different calibers was "also a significant factor constituting an additional reason" for the upward variance)). This Court has repeatedly held that large amounts of ammunition may warrant a variant sentence because it is a consideration not adequately accounted for in the guidelines, and because they contribute to the lethalness of the machine gun. *See, e.g.*, *United States v. García-Mojica*, 955 F.3d 187, 189 & 193 n.7 (1st Cir. 2020) (affirming upward variance based, in part, on defendant's possession of 47 rounds of ammunition because the "Guidelines d[id] not take into consideration the extra ammunition [the defendant] was carrying" and because it "contributed to the lethalness of the automatic weapon"); *United States v. Morales-Negrón*, 974 F.3d 63, 67 (1st Cir. 2020) ("[T]he district court provided several plausible rationales for the upward variance. These included the substantial amount of ammunition and magazines involved in the offense."); *Bruno-Campos*, 978 F.3d at 804, 806 (characterizing eighty-nine rounds of ammunition "packed into four separate magazines" as "a substantial amount of ammunition").

Finally, the court appropriately acknowledged the necessity for deterring Colón-Vázquez and others from perpetrating gun-related offenses in Puerto Rico. *See United States v. Delgado-Sánchez*, 849 F.3d 1, 13 (1st Cir. 2017) ("The district court adequately explained itself: . . . [It] measured the need for additional specific deterrence and evaluated the seriousness of the [gun-possession] offense by explaining the impact of crimes like this one in Puerto Rico."). The court acknowledged the heightened need for deterrence in Colón-Vázquez's case, which involved two machineguns and a substantial amount of ammunition, in view of the acute gun-violence problem in Puerto Rico. (AA at 45). "The incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence, a factor that must be weighed under §3553(a)(2)." *United States v. Viloria-Sepúlveda*, 921 F.3d 5, 10 (1st Cir. 2019) (internal quotation marks and citations omitted). The court noted murder statistics in Puerto Rico as compared to other First Circuit districts. (AA at 43). *See United States v. Flores-Machicote*, 706 F.3d 16, 22–24 (1st Cir. 2013) (upholding upward variance where the district court relied on Puerto Rico's high murder rate while analyzing the need for deterrence factor).

Colón-Vázquez also asserts that the court failed to consider his youth and lack of prior criminal history during the sentencing process. "It is incorrect to assume, as the defendant does, that his failure to persuade the court to impose a more lenient sentence implies that the mitigating factors he cites were overlooked." *United States v. Santa-Soler*, 985 F.3d 93, 99 (1st Cir. 2021). The district court considered all potential mitigating factors cited by Colón-Vázquez. (AB at 8, 25). The record indicates that the court explicitly considered Colón-Vázquez's age, educational and employment background, history of substance abuse, and criminal history. (AA at 30).

## ii. Colón-Vázquez's 48-month sentence was substantively reasonable.

The district court's sentence was substantively reasonable. As previously mentioned, Colón-Vázquez preserved his substantive reasonableness claim regarding the length of his sentence. *Holguin-Hernández*, 140 S.Ct. at 766–67.

A sentence is substantively reasonable "so long as it rests on a 'plausible sentencing rationale' and embodies a 'defensible result.'" *United States v. Ruiz- Huertas*, 792 F.3d 223, 228 (1st Cir. 2015) (quoting *Martin*, 520 F.3d at 96). And given that the district court "possesses a number of institutional

advantages, including a superior coign of vantage, greater familiarity with the individual case, [. . .] and the cumulative experience garnered through the sheer number of district court sentencing proceedings that take place day by day," appellate review for substantive reasonableness, is "highly deferential." *United States v. Madera-Ortiz*, 637 F.3d 26, 30 (1st Cir. 2011) (quoting *Martin*, 520 F.3d at 92). What is more, "there is not a single reasonable sentence but, rather, a range of reasonable sentences." *Martin,* 520 F.3d at 92. And that range has "expansive boundaries." *Id*. This Court will reverse a sentence "if—and only if—the sentencing court's ultimate determination falls outside the expansive boundaries of that universe." *Id.* In reviewing the district court's sentence for substantive reasonableness, the Court takes into account "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.

"Even when the court imposes a non-guideline sentence, a reviewing court must afford 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Vargas-García*, 794 F.3d at 167 (quoting *Martin*, 520 F.3d at 92).

Here, the district court provided a plausible rationale. The court stressed the nature and circumstances of the offense, including the lethal nature of Colón-Vázquez's two machineguns and rifle, and his possession of a substantial amount of ammunition and ammunition magazines. The court also relied on the heightened need for deterrence. In evaluating this factor, the court considered, among other things, the high crime rate in Puerto Rico. (AA at 40). Mindful that under First Circuit precedent a court "cannot . . . consider the high crime rate in Puerto Rico without a case-specific nexus," the court explained that nexus. (AA at 39, 43). The court noted that, in addition to all the firepower, Colón-Vázquez also possessed a black hoodie, gloves, and two ski masks, which the court found were not really needed in Puerto Rico other than to avoid identification when committing crimes. (AA at 44). These facts, combined with all the firepower possessed by Colón-Vázquez, increased the need for both specific and general deterrence, especially when considering Colón-Vázquez's assertion that he committed the instant offense because he was following a trend and following his acquaintances who supported his unlawful behavior. (AA at 32, 44; DE 22 at 7 ¶ 23).

The court remarked that it chose its sentence to reflect the seriousness of Colón-Vázquez's offenses, to promote respect for the law, to protect the public from additional crimes and to address the issues of deterrence and punishment. (AA at 45). The sentence is defensible since it was "sufficient, but not greater than necessary" as required by section 3553(a).

A successful challenge to the substantive reasonableness of a sentence "must comprise more than a thinly disguised attempt by the defendant 'to substitute his judgment for that of the sentencing court.'" *United States v. Vargas-García*, 794 F.3d 162, 167 (quoting *United States v. Clogston*, 662 F.3d 588, 593 (1st Cir. 2011)). In the end, "[a] sentence will stand so long as there is a plausible sentencing rationale and a defensible overall result." *United States v. Bunchan*, 626 F.3d 29, 35 (1st Cir. 2010) (internal quotation marks and citations omitted). That is the case here. Because Colón-Vázquez's sentence falls within the expansive universe of substantively reasonable outcomes, the court did not abuse its discretion. Colón-Vázquez's sentence should be affirmed.

### iii. Colón-Vázquez's arguments to the contrary are unavailing.

Colón-Vázquez's primary contention is that the district court did not

provide sufficient reasoning or explanation for its decision and that the reasons it did provide were already incorporated into his Guidelines range. (AB at 8-9). His arguments, however, lack merit.

As one of the main reasons for the upward variance, the district court focused on Colón-Vázquez's possession of not one but two machineguns, which it considered highly dangerous.[5] (AA at 31). It also highlighted Colón-Vázquez's possession of a Smith & Wesson model MP 15 assault rifle, seven ammunition magazines, a substantial amount of ammunition, as well as a black hoodie, two ski masks and gloves. (AA 30-31, 33-34). Contrary to Colón-Vázquez's assertions, these factors were not adequately addressed by the advisory guideline range. *See Bruno-Campos*, 978 F.3d 801, 806 (2020) (finding that nothing in USSG § 2K2.1(a)(4)(B) nor in § 2K2.1(b)'s two-level enhancement for possession of three firearms "accounted for the possession

---

[5] Colón-Vázquez argues that the district court impermissibly based its decision on the dangerousness of a machinegun. (AB 26-26). But, as discussed herein, the district court provided numerous other reasons for the variance. *See, e.g.*, *United States v. Santa-Otero*, 843 F.3d 547, 550 (1st Cir. 2016) (rejecting an argument that a district court relied solely on machinegun possession itself, calling it "meritless" where the district court also pointed to "specific features of the ammunition" that a defendant possessed, namely seven loaded magazines). And, in any event, it was not improper for the court to rely on Colón-Vázquez's possession of not one, but two machineguns.

of more than one machine gun, substantial quantities of ammunition, and/or multiple high-capacity magazines"); *Díaz-Lugo*, 963 F.3d at 155.

Like the number of machine guns, the seven ammunition magazines and more than 200 rounds of ammunition were also valid grounds for an upward variance. *See United States v. González-Flores*, 988 F.3d 100, 102 (1st Cir. 2021) (holding that the district court was "entitled to base an upward variance on the especially destructive nature of the gun (here, one modified with an internal chip) and the amount of ammunition [(43 rounds)] that [the defendant] possessed, where those considerations were not adequately accounted for in the [G]uidelines."); *García-Mojica*, 955 F.3d at 193 n.7 ("The Guidelines do not take into consideration the extra ammunition [47 rounds] García was carrying when apprehended."); *Bruno-Campos*, 978 F.3d at 804, 806 (characterizing eighty-nine rounds of ammunition "packed into four separate magazines" as "a substantial amount of ammunition").

Indeed, Colón-Vázquez possessed more ammunition and ammunition magazines than what this Court recently found in *Rosario-Merced* to be sufficient to support an upward variance. *See United States v. Rosario-Merced*, 109 F.4th at 84 (1st Cir. 2024) (upholding upward variance based in part on

defendant's ammunition and magazines and finding that "107 rounds of ammunition, four magazines (three of which were high-capacity)" were "on the higher end of [the] spectrum"); *see also United States v. Polaco-Hance*, 103 F.4th 95, 104 (1st Cir. 2024) ("Under our precedent, a sentencing court may consider both the amount of ammunition and the number of high-capacity magazines [there, 111 rounds and four extended magazines] as aggravating factors not already accounted for by the guidelines if they exceed what is consistent with simple possession."). Thus, Colón-Vázquez failed to show the district court abused its discretion by reasoning that the large amount of ammunition and magazines militated in favor of a stiffer sentence.

In support of his appellate contentions, Colón-Vázquez relies on *United States v. Rivera-Berríos*, 968 F.3d 130 (1st Cir. 2020), *United States v. García-Pérez*, 9 F.4th 48 (1st Cir. 2021), and *United States v. Carrasquillo-Sánchez*, 9 F.4th 56 (1st Cir. 2021). (AB 43-46, 48-49). But these cases are distinguishable because in the present case the court specifically detailed reasons why Colón-Vázquez's case differs from the individual covered by the guideline. To that effect, the court highlighted that Colón-Vázquez was found in possession of not one but two machineguns, plus an assault rifle. Second, Colón-

Vázquez possessed numerous ammunition magazines and a substantial amount of ammunition. Third, there was a heightened need for deterrence considering the prevalence of gun-related violence in Puerto Rico and that Colón-Vázquez admitted that he committed the offense because he was following a trend and following acquaintances who pressured him and supported his criminal conduct. (DE 22 at 7 ¶ 23). Consequently, Colón-Vázquez's arguments lack merit. *Rivera-Berríos*, 968 F.3d at 133 n.2; *García-Pérez*, 9 F.4th at 51; *Carrasquillo-Sánchez*, 9 F.4th at 58. The rationale used by the district court here is also different than Colón-Vázquez's proffered cases. *See e.g.*, *Rosario-Merced*, 109 F.4th at 83-85 (distinguishing *Rivera-Berríos* line of cases based on district court's reasoning); *United States v. Carmona-Alomar*, 109 F.4th 60, 74-76 (1st Cir. 2024) (same); *Polaco-Hance*, 103 F.4th at 101-03 (same).

In sum, the district court adequately explained why it believed Colón-Vázquez's case warranted a sentence outside the advisory guidelines range and reached a defensible result within the wide range of reasonable outcomes.

## CONCLUSION

The sentence imposed by the district court was procedurally and substantively reasonable. After calculating the sentencing guideline range appropriately, the court considered the section 3553(a) factors and imposed an upwardly variant sentence. First, Colón-Vázquez was found in possession of not one but two machineguns, which are particularly dangerous weapons. Second, Colón-Vázquez also possessed a Smith & Wesson model MP 15 rifle, seven ammunition magazines and a substantial amount of ammunition. Third, there was a heightened need for deterrence considering the prevalence of gun-related crimes in Puerto Rico and Colón-Vázquez's admissions that he committed the offense because he was following a trend and following acquaintances who supported his criminal conduct. The sentence was substantively reasonable since the court weighed the relevant factors and reached a defensible, justifiable sentence. Contrary to Colón-Vázquez's assertions, the court clearly individualized his sentence and provided reasons not included in the guidelines to justify its upward variance. The district court's sentence should be affirmed.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this Wednesday, April 23, 2025.

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Daphne Marie Cordero-Guilloty
Special Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in FED. R. APP. P. 32(a)(7)(B) because:

   ☑ the brief contains  6,634  words, excluding the parts of the brief exempted under FED. R. APP. P. 32(f), *or*

   ☐  the brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted under FED. R. APP. P. 32(f).

2. This brief complies with the typeface requirements in FED. R. APP. P. 32(a)(5) and the type-style requirements in FED. R. APP. P. 32(a)(6) because:

   ☑  the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using Book Antiqua in 14 point, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____ with _____.

Date: April 23, 2025                    /s/ Daphne Marie Cordero-Guilloty
                                        Signature of filing party

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Daphne Marie Cordero-Guilloty
Special Assistant United States Attorney